## Britton v. Britton
*[Cite as 8 AOA 613]*

*Case No. 89-G-1547*
*Geauga County, (11th)*
*Decided December 28, 1990*

*David E. Lowe and David M. Ondrey, Thrasher, Dinsmore & Dolan, 100 Center Street, P.O. Box 429, Chardon, Ohio 44024, for Plaintiff-Appellee.*

*Thomas J. LaFond and John S. Chapman, Schneider, Smeltz, Ranney & LaFond, 1525 National City Bank Building, Cleveland, Ohio 44114, for Defendant-Appellant.*

FORD, J.

This is an appeal from a final judgment entry of divorce, property division, and alimony. On July 3, 1989, a trial was held. The

court rendered its final judgment entry on November 28, 1989, granting the appellant a divorce. The court also divided the property and awarded appellant alimony.

Appellant received approximately $300,000 in the property division and was awarded $3,000 monthly alimony. In dividing the property, the court determined the major asset (Britton Gallagher and Associates, Inc.) (corporation) to be the husband's (appellee) nonmarital property.

There was undisputed testimony that in 1957, prior to the marriage, appellee's father transferred a one-third interest in (then) Britton Realty and Insurance Company to appellee. The parties were married in 1962. However, the earliest available financial records were for 1963 which showed appellee's interest as forty-five percent. By 1964, appellee's interest was fifty percent via a gift to him from his father. Also in 1964, appellee's company purchased another insurance agency with renewal commissions due the company. The company then merged into a partnership in 1970. In 1974, appellee purchased his father's complete interest in the company and paid his father from the commissions due the company. Also in 1974, appellee formed a new partnership (with Gallagher), dissolved it in 1981 and formed a new corporation (Britton Gallagher and Associates, Inc.). In order to purchase stock of the corporation, appellee used the proceeds of $26,800 from the previously dissolved partnership. In addition, appellee applied $1,100 from the parties' joint account to purchase the stock.

The court found that the $1,100 amounted to 3.94% or $18,582.62, and held it to be a marital asset. The court arrived at this figure by adopting appellee's findings of fact and conclusions of law as to marital versus nonmarital property and the percentages thereof. The court designated the remaining 96.6% of the corporation as a nonmarital asset belonging to appellee. The court found the net value of the corporation, as of the date of trial, to be $1,531,300, of which appellee owned 126 shares or 30.8% that had a fair market value of $471,640.40 then.

Appellant appeals only the court's determination of the corporation as a nonmarital asset, raising the following assignments of error:

"1. The trial court abused its discretion and committed reversible error in failing to find the values required to ascertain the marital portion of appellee's interest in Britton Gallagher and Associates, Inc.

"2. The trial court abused its discretion and committed reversible error in determining 96.06% of appellant's interest in Britton Gallagher and Associates, Inc. to be a nonmarital [sic] asset."

In appellant's first assignment of error, she asserts that the court should have assigned a value to appellee's fifty percent interest in Britton Gallagher and Associates, Inc. There was evidence adduced at trial that prior to the marriage appellee was gifted a one-third interest in his father's real estate and insurance company. The only available financial records regarding the partnership was for 1963 which showed that appellee owned forty-five percent of the business, which was gifted to him. In 1964, his interest, as a result of a gift, had risen to fifty percent. Therefore, it is clear that this fifty percent portion of the business, in essence, was acquired before the marriage and/or gifted during the marriage. "Properties acquired by a party by gift, bequest, devise or desent are generally considered non-marital property." *Black v. Black* (June 4, 1989), Cuy. App. No. 43005, unreported.

Appellant argues that this portion of appellee's interest should be valued in order to ascertain the marital portion of the business.

In *Eisler v. Eisler* (1985), 24 Ohio App. 3d 151, this court held that it was necessary for the trial court to ascertain the value of all marital property for purposes of property division. There is nothing, however, in *Eisler, supra,* that states that nonmarital property must also be valued. There are, however, some cases which indicate that nonmarital assets should be valued for purposes of sustenance alimony. That is not the case here since alimony is not in issue.

Appellant contends that at trial, it was revealed that the business had a negative net worth at the time of the parties' marriage. This fact, however, does not control the valuation for purposes of this case, or when the valuation is determined by the trial court. It is clear that "the court, in the exercise of its equitable powers, can pick a date at which

the property valuation can be made." *Berish v. Berish* (1982), 69 Ohio St. 2d 319.

The court did not specifically assign a value to appellee's forty-five percent interest. However, such an evaluation would have clearly assisted the court in determining the value of the portion to be ultimately considered as marital property as a result of appellee's marital labors or as a result of the expenditure of marital funds. On the other hand, the court did find that 30.8 percent was appellee's nonmarital asset and that the present market value of as of July 3, 1989, the date of the trial, was $471,640.40. Therefore, the court, within its discretion, chose July 3, 1989, as the date to value the entire business.

To the extent that the court did in fact determine the value of the entire interest, both that which was marital and nonmarital, the first assignment is without merit.

However, since this court concludes that it is appropriate to establish such values in order to more equitably divide the marital assets, the assignment is well taken.

In appellant's second assignment, she presents two issues which are basically the same. Namely, that there was evidence presented at trial which demonstrated that appellee's premarital interest in the corporation was forty-five per cent and, therefore, any increase in his ownership is a marital asset because it was attributed to marital income.

Appellant's assignment is well taken.

Again, the evidence at trial, the parties' testimony, and the judgment entry all disclose that appellee's premarital and/or nonmarital interest in the corporation was approximately forty-five percent. This is undisputed.

It is also uncontroverted that throughout the marriage, appellee's ownership. was transmuted into varying percentages.

Therefore, unless it can be shown that appellee's original forty-five percent interest retained its nonmarital character throughout the marriage, any subsequent proprietory interest or increase in ownership is a marital asset. *Worthington v. Worthington* (1986), 21 Ohio St. Sd 13; *Walkup v. Walkup* (1986), 31 Ohio App. 3d 248.

In *Walkup, supra,* the court stated:

"Where the increase in value of non-marital property of one spouse is in no part due to the efforts of the other spouse, and neither marital funds nor labor was expended to increase the value, it is inequitable to divide the appreciation between the spouses." *Id.* at paragraph four of the syllabus.

Appellee contends that the subsequent acquisitions were not purchased with marital funds nor did appellant expend any of her labor to increase the value of the corporation.

As to the appellant's labor, it is noted in the record that the wife never worked outside the home during the marriage. However, as pointed out in *Wischmeier v. Wischmeier* (June 7, 1984), Cuy. App. Nos. 47493, 47494, unreported.

"Generally, an increase in the value of non-marital property is itself non-marital property. But, where the increase in value is the result of the joint efforts of both marriage partners, either directly through participation in the business, or indirectly by providing homemaker services, that value must be considered marital property and subject to division, *Wolfe v. Wolfe* (1976), 46 Ohio St. 2d 399, ***."

Appellee's attempt to diminish appellant's contributions as a homemaker is contrary to the underlying rationale of *Wolfe, supra,* and its progeny, and therefore is inappropriate.

Appellee's claim that his subsequent acquisitions were not purchased with marital funds is also unfounded. As stated in the facts, appellee made acquisitions and formed mergers, partnerships, and corporations in an effort to expand the business. Appellee's initial acquisition was purchased with renewal commissions; also he bought out his father's remaining interest with earnings from the agency. In addition, one would reasonably conclude that the marital labors of appellee also increased the value of the business and, therefore, of the stock in question.

Additionally, appellee purchased $26,800 worth of stock for his newly formed corporation with the proceeds from a previously dissolved partnership. However, appellant also used $1,100 of the parties' joint account to purchase the stock. The court found that appellant's only interest in the business resulted from her share of the $1,100; (specifically a 3.94% interest); otherwise the trial court held the entire business to be a nonmarital asset.

Contrary to the court's finding and appellant's contentions, the renewal commissions were in fact marital income or funds. A similar claim regarding the character of renewal commissions was made in *Sherman v. Sherman* (Oct. 5, 1989) Cuy. App. No. 55711, unreported. The Eighth District court's definition and disposition of renewal commissions is both logical and persuasive. In *Sherman,* the husband asserted that many of his commissions were derived from renewals on policies written prior to the marriage.

The court held that:

"While many of the policies may have been sold prior to the marriage, we cannot agree with the husband's contention that renewals on premarital policies occurring during the marriage should not be included as marital income for purposes of valuing the DCIC'S. The income from commissions was not earned until the renewal actually occurred; hence, any accretion of wealth would not relate back in time to the original execution of the insurance contract. The husband's income tax returns clearly demonstrate this point. The husband reported income from commissions in the year in which the commission was earned." *Id.* at 6.

Likewise, in the case at bar, appellee made purchases and acquisitions with renewal commissions that were clearly earned during the marriage, and as such, were put back into the corporation, as opposed to being taken home for family and/or household expenses, or deposited in marital savings accounts. Consequently, a renewal commission like "a monthly pension benefit is payment for past services, and if rendered during coverture, it constitutes a marital asset." *Holcomb v. Holcomb* (1989), 44 Ohio St. 3d 128, 132.

In another attempt to thwart appellant's argument, appellee claims that the increase in the value of the business is nonmarital because he was duly compensated for his services by way of salary or wages. In essence, appellee contends that he falls within the exception to the rule that a party's labors during marriage are marital labors, and that the fruits of marital labor are marital assets. *Worthington v. Worthington* (1986), 21 Ohio St. 3d 73.

This exception was enunciated in *Black v. Black* (June 4, 1981), Cuy. App. No 43005, unreported. As pointed out by appellant, such reliance is misplaced. There, the husband (president) was a well paid employee in the wife's undisputed premarital corporation. The corporate stock value increased and the husband claimed that since it was his efforts that caused the increase in the stock value, the corporation should be designated a marital asset.

The court held that the husband's efforts as president did create the increase in stock value. However, he was well compensated through annual salaries for his efforts, and as such, he was not entitled to the subsequent appreciation, nor did his efforts render the undisputed non-marital property, marital property.

Unlike the facts in *Black,* the only portion of the business in the instant case that is indisputably a non-marital asset is the original value of the forty-five percent ownership gifted to appellee. All subsequent increased ownership, purchased with marital income, (renewal commissions), is a marital asset to be divided equitably between the parties. *Worthington, supra;* also, see, *Cherry v. Cherry* (1981), 66 Ohio St. 2d 348.

The instant case is further distinguishable from Black, *supra,* because in the later case there was no increase in ownership percentage during the marriage. There was rather an enhancement in value due to inflation or from conditions beyond the control of the parties that could not be primarily ascribed to the husband there. On the contrary, in the case at bar, the increase in value and ownership did not result from inflation, etc., but primarily from appellee's efforts to increase the business, which was accomplished with marital income.

Therefore, since the facts in the record clearly reveal that appellee used marital income/funds to acquire additional ownership throughout the marriage, the trial court's finding that 96.4% of the corporation is a nonmarital asset and only 3.94% is a marital asset is incorrect.

At the outset, it should be noted that this court does not take umbrage with the trial court's finding that appellee's interest is $471,640.00. However, it does appear that a greater percentage of the corporate asset is marital property than the 3.94% that was allocated. Accordingly, the case is remanded for redetermination consistent with *Worthington, supra.*

The trial court should assess the percentage of ownership in the corporation that is attributed to marital labor and income in order to arrive at a true marital/non-marital allocation, and determine what, if any, effect the assessment may have on the general division of the marital property.

For the foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

MAHONEY, P.J., and BASINGER, J., concur.

BASINGER, J., Putnam County Common Pleas Court, sitting by assignment.